1 | William L. Hinkle (SBN 48013)
minniemaru@adelphia.net
2 | **THE HINKLE LAW FIRM**
3600 S. Harbor Blvd., #147
3 | Oxnard, CA 93035
Telephone: (805) 650-9873
4 | Facsimile:   (805) 650-9837

5 | John K. Courtney (SBN 136720)
jcourtney@girardikeese.com
6 | Jennifer Lenze (SBN      )
jlenze@girardikeese.com
7 | **GIRARDI & KEESE**
1126 Wilshire Blvd.
8 | Los Angeles, CA 90017
Telephone: (213) 977-0211
9 | Facsimile: (213) 481-1554

10 | Attorney for Plaintiffs,
Anna Johnson and Landon Brinkman,
11 | on behalf of themselves and others
similarly situated

12 |

13 |

14 |

15 |

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| ANNA JOHNSON and LANDON BRINKMAN, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| GMRI, INC. and DARDEN RESTAURANT'S INC., dba Olive Garden Restaurants and Does 1 through 20, inclusive, | ) ) ) ) ) |
| Defendants. | ) ) ) ) |

Case No. 1:07-CV-00283-LJO-DLB

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT

Date:   March 29, 2007
Time:   8:30 a.m.
Ctrm:   4
        Hon. Lawrence J. O'Neill

1

1

2

3      Now come Plaintiffs, Anna Johnson and Landon Brinkman, ("Johnson" and "Brinkman"

4  or "Plaintiffs") who respond to Defendant's"GMRI") motion to strike portions of Plaintiffs'

5  complaint.

## I. **INTRODUCTION**

7      Plaintiffs filed the complaint in this action alleging three causes of action against GMRI

8  that arose out of their employment with the Defendant during the times set forth in their

9  complaint.

10      The complaint further alleges that Johnson and Brinkman were employed by the Olive

11  Garden restaurant located in Bakersfield, California, one of a number of Olive Garden restaurants

12  operated by GMRI in this state.

13      In Count One, Plaintiffs allege that they were required to work splits shifts by GMRI but

14  did not receive the statutorily mandated split shift premium of an extra hour of pay for each split

15  shift worked.

16      In Count Two, Plaintiffs allege that they were knowingly and unknowingly required to

17  pay for cash shortages and walkouts that, under California law, should have been borne by

18  GMRI.

19      In Count Three, Plaintiffs allege that GMRI's conduct as set forth, constituted a violation

20  of California's private attorney general's act which is codified in Business and Professions Code

21  §17200.

22      GMRI asks this court to strike various allegations in Plaintiffs' complaint on the

23  following grounds: (A) For the purposes of pursuing this matter as a class action, Plaintiffs have

24  not and can not plead facts establishing any ascertainable class; (B) Plaintiffs have improperly

25  pled a four year statute of limitations in Count 1 because the Wage Order's extra pay requirement

26  for working a split shift is a penalty, not a wage; (C) That Labor Code §203 penalties are not

27

28

---

2

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE

1  supported by the facts in the complaint; (D) That Labor Code §558 penalties are not available to

2  Plaintiffs; (E) That penalties are not available to Plaintiffs under the URL; (F) That attorney's

3  fees are not available to Plaintiffs and therefore that part of the prayer must be stricken; (G) That

4  punitive damages are not available to Plaintiffs under any of their claims; and (H) That

5  disgorgement of profits is not available for any of the alleged violations in the complaint.

6  ## II.  ARGUMENT AND POINTS AND AUTHORITIES

7  At the outset, when applying  state law to a resolution of the case, this court is bound by

8  the decisions of California's highest court. *Lost Valley Timber, Inc. V. Power City Constr. Inc.*

9  (1987) 809 F.2d 590, 592 (9th Cir.)

10  Under California law, motions to strike are disfavored.  The policy of the law is to

11  construe pleadings liberally with a view to substantial justice. *California Code of Civil*

12  *Procedure §452.*  This rule is also articulated in *Fed.Rules Civ.Proc. Rule 12(f), 28 U.S.C.A.*

13  (A) **For the purposes of pursuing this matter as a class action, Plaintiffs have not**

14  **and can not plead facts establishing any ascertainable class**

15  *Fed.Rules Civ.Proc. Rule 12(f), 28 U.S.C.A.* also mandates that when considering a

16  motion to strike, courts must view the pleading in the light more favorable to the pleader.

17  GMRI asserts that Plaintiffs cannot plead the class of persons injured by GMRI's "server

18  banking" cash handling system because the class is defined in terms of several different legal

19  conclusions: (1) servers and bartenders who were required to pay for cash shortages in violation

20  of CCR 11050(8); (2) servers and bartenders who were never aware of a cash shortage but

21  unknowingly paid it out of their own tips that were commingled with the restaurant's funds,

22  and/or (3) servers and bartenders who were misled by representations that they would be

23  disciplined if they did not make up for the cash shortages with their own monies.

24  Defendant's servers and bartenders can be readily identified.  Defendants are obligated by

25  state and federal law to maintain employment records. (*Labor Code §§ 1174, 1174.5, 1175*; see

26  also *IRS Pub. 583* "Starting a Business and Keeping Records.")  Furthermore, using the records

27

28

3

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE

1   of defendant is a well-established and accepted means of determining class criterion.  (*Collins v.*

2   *Rocha* (1972) 7 Cal.3d 232, 237)  Given that it is a crime to fail to maintain records of an

3   employee's hours worked, it is assumed that Defendant maintained those records for the class

4   members; if not, Plaintiffs will seek leave of court to amend the complaint to add this violation.

5        The thrust of GMRI's attack appears to suggest that each individual in the putative class

6   may not have been injured in precisely the same way as every other member of the class and

7   therefore a class based on three different types of injury is not certifiable.  GMRI cites no

8   authority for the proposition.

9        This is essentially an attack on the commonality criterion which requires the existence of

10  common questions of law or fact[1], and is generally treated together with the issues of

11  predominance and typicality.  (*Daar*, supra, 67 Cal.2d at 695; In re *United Energy Corp., etc.,*

12  *Securities Litigation* (C.D.Cal. 1988) 122 F.R.D. 251, 254.)  What is required is that common

13  questions of fact or law exist which predominate over issues unique to individual plaintiffs. The

14  existence of individual issues or facts–generally present in any case arising from employment–is

15  not a bar to class certification as long as they do not render class litigation unmanageable or

16  predominate over the common issues. (See *Kelley v. SBC, Inc.* (N.D. Cal. 1998) 1998 U.S. Dist.

17  LEXIS 18643, 40-42; *Custom Kitchen*, supra, 191 Cal.App.3d at 1354 ("presence of individual

18  damages issues cannot bar certification.") Common issues are predominate when they would be

19  "the principal issues in any individual action, both in terms of time to be expended in their proof

20  and other importance...." *Vasquez*, supra, 4 Cal.App.3d at 810.

21       GMRI's argument also focuses on the allegation in the complaint that "class members

22  usually didn't realize that they were making up Defendant's shortages."  This is more properly

23  addressed when challenging whether or not members of the putative class can prove their

24  damages.

25  _____

26  [1] This is frequently and mistakenly read as "and"; it is "or". (F.R.C.P. 23(b)(3).)

27  _____

28
    PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE

1    Johnson and Brinkman estimate that they have had to pay shortages of $2,000 and $450

2    respectively from all three separate types of losses.  They and the other members of the putative

3    class are entitled to estimate the amount they have been damages under certain circumstances

4    under California law.

5    In *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 727 (*Hernandez*), a seminal case

6    in California employment law that addresses the subject of shifting the burden of proof in certain

7    situations, the court stated:

8    **If the employee**...proves that he or she performed work for which he or she did
     not receive the proper minimum wage or overtime compensation and **produces**
9    **sufficient evidence to permit a reasonable inference** as to the amount and
     extent of that work, **the burden shifts to the employer** to come forward with
10   evidence of the precise amount of work performed or to negate the inference
     drawn from the employee's evidence.  If the employer fails to produce such
11   evidence **because it has failed to keep proper records**, the court may award
     damages based on the employee's evidence, even if the damages only
12   approximate the actual hours worked. (Emphasis added)

13   It should be noted that the complaint alleges: "At the end of the server/bartender's shift,

14   the server/bartender is responsible to pay to the restaurant, in credit card receipts, cash and other

15   tender recognized by Defendant, the total of the bills for the meals, drinks and services provided

16   by that server/bartender for the shift according to the printout provided by the POS system."

17   ("cash due").  Defendant's mandate that servers and bartenders match the "cash due" at the end

18   of their shifts has nothing to do with any tips that the employee might earn during the course of

19   the day's employment.  If the employee only has one customer and that one customer walks out

20   without paying, the Olive Garden employee is responsible to the corporation to make up that

21   shortage by matching the cash due at the end of the shift.  The employee's wages are ultimately

22   the source of that payment.

23   GMRI's reliance on *Kerr's Catering Service v. Department of Industrial Relations*

24   (1962), 57 Cal.2d 319 ("Kerr's Catering") is misplaced.

25   The court at *Kerr's Catering*, 57 Cal.2d 319 at 323 stated:

26   The narrow question presented, is whether the commission has power to prohibit

27

28
                                           5
                              PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE

1    deductions for cash shortages from employees' commission even though the
2    affected employees are earning more than the minimum wage.

3        The decision in *Kerr's Catering* validated the Industrial Wage Order found in CCR §
4    11050.8 provides in pertinent part:

5        "No employer shall ... require any reimbursement from an employee for any cash
         shortage ... unless it can be shown that the shortage ... is caused by a dishonest or
6        willful act, or by the gross negligence of the employee."

7        It is noteworthy that *Kerr's Catering* argued that it was unfair to the employer to not be

8    allowed to deduct shortages from the employee because it placed the burden of losses on the

9    employer.  The court responded at *Kerr's* at 329:

10       ...some cash shortages...are inevitable in almost any business operation.  It does
         not seem unjust to require the employer to bear such losses as expenses of
11       management when it is presently the unchallenged practice to require him to bear,
         as a business expense, the cost of tools and equipment, protective garments and
12       uniforms furnished to the employee by prohibiting....deductions for these costs.

13       GMRI seeks to do indirectly by the use of threats, what it legally precluded from doing

14   directly.  A motion to strike is not the vehicle to overturn the holding of the California Supreme

15   Court.

16       **(B) Plaintiffs have improperly pled a four year statute of limitations in Count 1**

17   **because the Wage Order's extra pay requirement for working a split shift is a penalty, not**

18   **a wage**

19       Count 1 alleges that Plaintiffs worked numerous "split shifts" during the complaint

20   period and were not paid the split shift premium as is required by *CCR 11050(4)(C)*.  That

21   section provides:

22       When an employee works a split shift, one (1) hour's pay at the minimum wage
         shall be paid in addition to the minimum wage for that workday,...[2]
23

24   _____

25   [2] Split shift is defined in CCR 11050.2(R): "Split shift" means a work schedule which is
     interrupted by non-paid non-working periods established by the employer, other than bona fide
26   rest or meal periods.

27   _____

28                                          6
                                            PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE

1    (Whether or not the "bonus hour" constitutes a penalty or wage may, but probably will

2    not, be answered by *Murphy v. Kenneth Cole Productions, Inc.*, 36 Cal.Rptr. 3d 418 (2005), as

3    GMRI points out, addresses the issue of whether or not *Labor Code §226.7* is a penalty or wage.)

4         The one California case that addresses the issue of whether or not "bonus hour" for being

5    required to work a split shift is a penalty or wage concluded that it is not a penalty.  In *Caliber*

6    *Bodywork, Inc. V. Superior Court* (2005) 137 Cal.App.4th 365, 36 Cal.Rptr.3d 31, at 42 states:

7         The eighth cause of action, which alleges Caliber failed to comply with IWC wage
          orders requiring employers to compensate an employee who works a split shift...
8         one hour at the minimum wage for each day the employee worked a split shift...
          seeks only the unpaid wages, not statutory or civil penalties.
9

10       **(C) That *Labor Code §203* penalties are not supported by the facts in the complaint**

11        *Labor Code §203* provides in pertinent part: "[i]f an employer willfully fails to pay... any

12   wages of an employee who is discharged or who quits, the wages of the employee shall continue

13   as a penalty [for up to 30 days]."

14        The "server banking" system used by GMRI is in reality nothing more than a device to

15   reduce the wage scale of its employees.  *Kerr's Catering*, 57 Cal.2d 319, 328 citing *Shalz v.*

16   *Union School District*, 58 Cal. App.2d 599.  The *Kerr's* Court at 327 also stated:

17        The employees, through this device (deducting inventory shortages from
          employees commissions) are in effect made insurers of the employer's
18        merchandise, and the commissions earned by the employees which are subject to
          the deduction server the same purpose as an employee's "bond" exacted by the
19        employer to cover shortages.

20        On a damage theory of recovery, Plaintiffs would, under the authority of *Kerr's Catering*,

21   57 Cal.2d 319, 327 and 327, be entitled to a *Labor Code §203* penalty.

22        At the outset, Plaintiffs' concede that the challenged section has been found to be a

23   penalty by a number of courts, and absent a contrary finding in *Murphy v. Kenneth Cole*

24   *Productions, Inc.*, 36 Cal.Rptr. 3d 418, are not available to them in an action brought under

25   California's Unfair Competition Law ("UCL"), *California Business and Professions Code*

26   *§17200*, et seq.

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE

1  But Plaintiffs have pled alternative legal theories of recovery.  This, they are permitted to

2  do under California law.  *Rader Co. V. Stone* (1986) 178 Cal.App.3d 10,29.  At some time during

3  these proceedings, Plaintiffs will be forced to make an election.  There has been no discovery in

4  this case and Plaintiffs are, therefore, unsure whether to proceed on a legal or equitable theory.

5  **(D) That Labor Code §558 penalties are not available to Plaintiffs**

6  Plaintiffs concede that they are not entitled to *Labor Code §558* penalties because they

7  did not comply with the exhaustion requirements of *Labor Code §2699.3* prior to filing their

8  complaint.  For that reason alone, GMRI's motion to strike this allegation in the prayer should be

9  granted.

10  **(E) That penalties are not available to Plaintiffs under the URL**

11  Plaintiffs concede that they are not entitled to penalties under the URL.  As Plaintiffs

12  stated in (C) above, they have pled this case using alternative theories.  They are entitled to

13  penalties if they elect to proceed availing themselves of their legal as opposed to equitable rights.

14  **(F) That attorney's fees are not available to Plaintiffs and therefore that part of the**

15  **prayer must be stricken**

16  Plaintiffs concede that they are not entitled to penalties under the URL.  As Plaintiffs

17  stated in (C) above, they have pled this case using alternative theories.  They are entitled to

18  penalties if they elect to proceed availing themselves of their legal as opposed to equitable rights.

19  **(G) That punitive damages are not available to Plaintiffs under any of their claims**

20  *Civil Code sect. 3294* states in pertinent part:

21  (a) In an action for the beach of an obligation not arising from contract, where it is

22  proved by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

23

24  GMRI cites no authority for the specific principal that punitive damages are not available

25  to Plaintiffs based on their allegations of conduct on the part of the employer that gave rise to the

26  damages to Johnson and Brinkman.

27

28

8

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE

1    GMRI's reliance on *Turnbull & Turnbull v. ARA Transporation Inc.*, (1990) 219

2    Cal.App.3d 811 is clearly misplaced. That case dealt with a statute which specifically provided

3    for treble damages where plaintiff was able to establish compensatory damages. Indeed, the

4    general rule of law in California is articulated in *Troensegaard v. Silvercrest Indus., Inc.*, (1985)

5    175 Cal.App. 3d 218 where the court ruled that the plaintiff, by seeking the civil penalties

6    provided for in the statute exercised the election to not take punitive damages. The court

7    reasoned that both the statutory civil penalty and punitive damages are both punitive in nature.

8    Plaintiff could elect to take one or the other but not both.

9        In the case at bar, Plaintiffs have already conceded that they are not entitled to penalties

10   under the URL. As Plaintiffs stated in (C) above, however, they have pled this case using

11   alternative theories. They are entitled to punitive damages under *Civil Code sect. 3294* if they

12   elect to proceed availing themselves of their legal as opposed to equitable rights and are able to

13   establish the requisite elements of the cause of the penalty provision.

14       **(H) <u>That disgorgement of profits is not available for any of the alleged violations in</u>**

15   **<u>the complaint</u>**

16       GMRI correctly identifies that the law set forth in *Korea Supply Company v. Lockheed*

17   *Martin Corp.* (2003) 29 Cal. 4th 1134 ("*Korea Supply, 29 Cal.4th 1134*") controls whether or not

18   Johnson, Brinkman and the putative class are entitled to either restitution or disgorgement if they

19   proceed under the equitable cause of action as articulated in the Third Cause of Action in their

20   complaint. In a nutshell, plaintiffs in an action pursued under the URL are limited in their

21   recovery to restitution as opposed to disgorgement.

22       In *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal. 4th 163, 177 the court

23   held that unpaid wages are recoverable under the UCL.

24       ...orders for payment of wages unlawfully withheld from an employee are a
         restitutionary remedy authorised by section 17203 (Business and Professions
25       Code section).

26   The United States District Court in *Montecino v. Spherion Corp.* (2006) 427 F. Supp. 2d

27

28                                                    PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE

1    965, 968 quoting Cortez:

2          In reaching this conclusion, the Court relied on the language of the UCL

authorizing the court to make orders or judgments...as may be necessary to restore

3          persons in interest any money or property acquired by unfair competition.

(Emphasis added)

4

5          Rather than seeking disgorgement of profits, Plaintiffs' Third Cause of Action should

6    pray for restitution to the members of the class.

7          Under California law, however, the prayer is not determinative of the relief that may be

8    granted in a contested matter.  California Practice Guide, Civil Procedure Before Trial, 6:297

9    states in pertinent part:

10         The parameters of relief available in a contested case are established by the

substantive allegations of the complaint; e.g., the damage claims.  The prayer is

11         not controlling: "When an answer is filed, the case becomes one in which the

court is authorized regardless of the prayer to grant any relief consistent with the

12         plaintiff's averments. [*Wright v. Rogers* (1959) 172 Cal.App.2d 349, 367.]

### III.  CONCLUSION

14          Plaintiffs submit that GMRI's motions to strike should be denied and granted as set forth

15    above.

16          Dated this 14th day of March, 2007,

                               JOHN K. COURTNEY

                               Attorney for Plaintiffs

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE

## *PROOF OF SERVICE*

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1126 Wilshire Boulevard, Los Angeles, California 90017.

     On March 14, 2007,  I served the foregoing document described as: **PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT** on interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope addressed as follows:

### PLEASE SEE ATTACHED MAILING LIST

[X ]    **(BY MAIL)  VIA FEDERAL EXPRESS OVERNIGHT**

    [X]    I deposited such envelope in the Federal Express mailbox at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

    [ ]    As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with U.S. Postal Service on that day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **(BY FAX)**

Executed on _____, at Los Angeles, California.

[ ]    **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the office of the addressee.

Executed on _____, at Los Angeles, California.

[ ]    **(STATE)**    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    **(FEDERAL)**    I declare that I am employed in the office of a member of the bar of this court at those direction the service was made.

HELEN YOSHIYAMA

**MAILING LIST – Johnson, et al. v. GMRI, Inc., et al.**

Stephen L. Berry, Esq.
Edward B. Raskin, Esq.
Paul, Hastings, Janofsky & Walker
695 Town Center Drive
Seventeenth Floor
Costa Mesa, CA  92626-1924
(714) 683-6200
FAX: (714) 979-1921

Jan E. Eakins, Esq.
Paul, Hastings, Janofsky & Walker
515 S. Flower Street
25th Floor
Los Angeles, CA  90071
(213) 683-6000
FAX: (213) 996-3356

Attorneys for Defendants GMRI, Inc. and Darden Restaurants, Inc.