IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA JOHNSON, et al., | CASE NO. CV F 07-0283 LJO DLB |
| Plaintiffs, | **ORDER ON DEFENDANTS' MOTION TO STRIKE INJUNCTIVE RELIEF** |
| vs. | (Doc. 44.) |
| GMRI, INC., et al, | |
| Defendants. | |

## INTRODUCTION

In this potential unfair wage class action, defendants GMRI, Inc. and Darden Restaurant's, Inc. (collectively "defendants") seek to strike plaintiffs Anna Johnson ("Ms. Johnson") and Landon Brinkman's ("Mr. Brinkman's") injunctive relief claims alleged in Ms. Johnson and Mr. Brinkman's (collectively "plaintiffs'") sole remaining claim under the unfair competition law of California Business & Professions Code sections 17200, et seq. ("Unfair Competition Law"). Defendants contend that, as former employees, Ms. Johnson and Mr. Brinkman lack standing to enjoin defendants' current employment practices. Plaintiffs argue that although they are no longer defendants' employees, plaintiffs are not deprived of standing to represent a class of current and prospective employees. This Court considered defendants' motion to strike on the record and VACATES the August 30, 2007 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DENIES defendants' motion to strike.

# BACKGROUND

Defendants operate the Bakersfield Olive Garden restaurant where plaintiffs had worked as food servers.[1] Plaintiffs pursue this action for themselves and other food servers and bartenders employed by defendants. No class has been certified. Plaintiffs contend that defendants:

1. Failed to pay plaintiffs and potential class members a bonus hour required by California Code of Regulations ("CCR"), Title 8, section 11050.4(C) ("CCR 11050.4(C)")[2] when they were required to work a split shift during a work day; and

2. Caused plaintiffs and potential class members to pay for cash shortages and walkouts as proscribed by CCR, Title 8, section 11050.8 ("CCR 11050.8").[3]

Based on the success of defendants' prior motions to dismiss and strike, plaintiffs proceed on a sole remaining (fourth) unfair competition cause of action to allege that defendants violated California Labor Code provisions and engaged in unlawful and unfair business practices to violate the Unfair Competition Law. The (fourth) unfair competition cause of action seeks restitution and injunctive relief for defendants' alleged failure to pay split shift premiums in violation of CCR 11050.4(C) and for requiring servers and bartenders to make up cash shortages ("severer banking") in violation of CCR 11050.8. With this motion to strike, defendants focus on plaintiffs' cash shortages claim. Defendants seek to strike the following words in **bold** from the unfair competition cause of action of plaintiffs' first amended complaint:

> 48. Plaintiffs are "persons" within the meaning of Business & Professions Code § 17204, and therefore has [sic] standing to bring this cause of action **for injunctive relief** . . . **and other appropriate equitable relief**.
>
> 54. **Unless restrained by this Court, Defendants will continue to engage in lawful conduct as alleged above.** Pursuant to Business & Professions Code this Court should make such orders or judgments, including appointment of a receiver, **as**

---

[1] Plaintiffs' operative first amended complaint alleges that plaintiffs ceased working for defendants in 2006.

[2] CCR 11050.4(C) provides: "When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment."

[3] CCR 11050.8 provides: "No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by dishonest or willful act, or by gross negligence of the employee."

1  **may be necessary to prevent the use or employment, by Defendants, their agents or employees, of any unlawful or deceptive practice prohibited by the Business & Professions Code** . . . (Bold added.)

Defendants further seek to strike paragraph 8 of the prayer of the first amended complaint, which states:

> 8. An injunctive order prohibiting Defendant from continuing to use server banking or any other cash handling device that causes or is likely to cause employers to pay for Defendant's losses due to cash shortages or walkouts.

Defendants contend that plaintiffs, as former employees of defendants, cannot demonstrate threat of irreparable injury from defendants' current employment practices to invoke standing to seek injunctive relief. Plaintiffs respond that as class representatives, they possess adequate standing to pursue injunctive relief for current employees of defendants.

## DISCUSSION

### Motion To Strike Standards

F.R.Civ.P. 12(f) empowers a court to "order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Motions to strike may be granted if "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992); *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). "[T]he function of a [F.R.Civ.P.] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023 (1994).

An "immaterial" matter has no essential or important relationship to the claim for relief or defenses pleaded. *Fantasy, Inc.,* 984 F.2d at 1527; *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 120, n. 5 (D. P.R. 1972); *Fleischer v. A.A.P., Inc.*, 180 F.Supp. 717 (D. Pa. 1958). An "impertinent" allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties. *Gilbert*, 56 F.R.D. at 120, n. 6; *Burke v. Mesta Mach. Co.*, 5 F.R.D. 134 (D. Pa. 1946). An "impertinent" matter consists of statements that do not pertain and are unnecessary to the issues in question. *Fantasy, Inc.*, 984 F.2d at 1527. Matters may be stricken to reduce trial complication or if challenged allegations are so unrelated to plaintiff's claims to

1 be unworthy of consideration as a defense and their presence in the pleading will prejudice the party
2 seeking to strike matters. *Fantasy, Inc.*, 984 F.2d at 1527.

3  With these standards in mind, the Court turns to plaintiffs' standing to pursue injunctive relief
4 against defendants.

### Standing For Injunctive Relief

6  Defendants characterize plaintiffs' injunctive relief claims to seek to prohibit defendants' "server
7 banking" at defendants' restaurants. Defendants describe server banking as a "wide-spread" restaurant
8 practice where servers collect customer payments and turn in the payments at the end of a shift.

9  As defendants note, "those who seek to invoke the jurisdiction of the federal courts must satisfy
10 the threshold requirement imposed by Article III of the Constitution by alleging an actual case or
11 controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660 (1983). A plaintiff must
12 demonstrate a "personal stake in the outcome" and that he/she "has sustained or is immediately in danger
13 of sustaining some direct injury." *Lyons*, 461 U.S. at 101-102, 103 S.Ct. 1660. The threat of injury must
14 be both "real and immediate," not "conjectural" or "hypothetical." *Lyons*, 461 U.S. at 101-102, 103
15 S.Ct. 1660.

16  "Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical.
17 In the context of injunctive relief, the plaintiff must demonstrate *real or immediate threat* of an
18 irreparable injury." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004)
19 (quoting *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001) (emphasis added). The United
20 States Supreme Court has observed that "[p]ast exposure to illegal conduct does not in itself show a
21 present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present
22 adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-496, 94 S.Ct. 669, 675-676 (1974). "[P]ast
23 wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out
24 a case or controversy." *Lyons*, 461 U.S. at 103, 103 S.Ct. 1660; *see Walsh v. Nevada Dept. of Human
25 Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) (former employee "would not stand to benefit from an
26 injunction" and "lacked standing to sue for injunctive relief from which she would likely benefit.")

27  Defendants further contend that plaintiffs are not entitled to seek injunctive relief based on
28 potential future injury to unnamed putative class members. "[S]ystemwide injunctive relief is not

available based on alleged injuries to unnamed members of a proposed class." *Hodgers-Durin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357, 116 S.Ct. 2174 (1996) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917 (1976)).

Plaintiffs respond that defendants' server banking "is ongoing and continues to make susceptible named plaintiffs and class members to further injury." Plaintiffs argue that striking their injunctive relief claim would be premature that this early stage. Plaintiffs point out that former employees often have standing to pursue injunctive relief for themselves and other class members in that "current employees often fear retaliation and therefore may be unlikely to bring suit." Plaintiffs advocate that "former employees may make *superior* class representatives because they are not susceptible to the same fears as current employees." (Italics in original.) Plaintiffs urge this Court to focus on "the standing of the *class* to seek equitable relief" and to consider injunctive relief "in light of further evidence of the class as a whole." (Italics in original.)

Plaintiffs rely on the following from *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 490, n. 6 (N.D. Cal. 1978), which addressed claims under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, et seq.,:

> A rule disqualifying discharged employees from representing current employees as a matter of law would be intolerable, since it would allow an unscrupulous employer to immunize himself from class action suits. The fact that the employee does not seek reinstatement should not change this result. . . .The extent of their dissatisfaction and their freedom from fear of retaliation makes these former employees among the most likely plaintiffs in Title VII actions. To bar them from representing current employees unless they stay on the job would either impose a hardship on individuals who feel that those jobs offer them no future, or prevent class treatment in a significant number of cases. The Court finds that in these circumstances the dangers to Title VII enforcement outweigh the dangers arising from the differing interests of former and current employees, particularly since the divergent interests are limited to one area, and a court should thus be able to monitor the conduct of the action to assure that adequate representation is being provided.

Plaintiffs also point to *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3rd Cir. 1975), another Title VII case, where the Third Circuit Court of Appeals observed:

5

> We believe that a former employee, who is not entitled to reinstatement, may still be an adequate representative of a class of past and present employees alleging discriminatory employment practices. Whether a party adequately represents a class depends on all the circumstances of the particular case. 3B J. Moore, Federal Practice P23.07(1) (2d ed. 1974) (hereinafter cited as Moore). . . . In fact, as the court observed in *Mack v. General Electric Co.*, 329 F.Supp. 72, 76 (E.D.Pa.1971), with respect to plaintiffs who were former employees of the company, 'being familiar with (the company's) employment practices and being free from any possible coercive influence of (the company's) management, (the plaintiffs) are better situated than either job applicants or present employees to present an intelligent and strongly adverse case against (the company's) alleged discriminatory practices.' Moreover, were the position advanced by Liberty Mutual adopted, employers would be encouraged to discharge those employees suspected as most likely to initiate a Title VII suit in the expectation that such employees would thereby be rendered incapable of bringing the suit as a class action. *Reed v. Arlington Hotel Co.*, 476 F.2d 721 (8th Cir.), cert. denied, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973).

For further support, plaintiffs turn to cases under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001, et seq., and which allowed former employees to pursue class injunctive relief. *See Flanagan v. Inland Empire Elec. Workers Pension Plan & Trust*, 3 F.3d 1246, 1248 (9th Cir. 1993) ("former employees similarly situated were participants in the Plan when the Plan fully terminated");*Church v. Consol. Freightways, Inc.,* 1991 WL 284083 (N.D. Cal. 1991).

This Court agrees with plaintiffs that public policy purposes dissuade striking injunctive relief at this early stage. Disqualifying plaintiffs to seek injunctive relief would unfairly advantage defendants and rob potential class members of a remedy. The circumstances here raise at least an inference that current employees may be resistant to champion the claims of potential class members. As plaintiffs allege, the server banking poses an actual or immediate injury to potential class members. Plaintiffs correctly note that the circumstances here differ from those in *Walsh,* 471 F.3d 1003 (relied upon by defendants), where the Ninth Circuit did not address a potential class, merely a former employee's attempt to seek injunctive relief. Defendants' claim that they challenge plaintiffs' Article III standing, not plaintiffs' ability to represent a class, is a distinction without form in that plaintiffs seek to represent a potential class. Defendants offer no definitive authority that plaintiffs are unable to rely on unnamed putative class members for standing. At this point, striking plaintiffs' injunctive relief claim would be premature.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DENIES defendants' motion to strike plaintiffs' injunctive relief claims; and
2. ORDERS defendants, no later than September 15, 2007, to file and serve an answer to plaintiffs' Unfair Competition Law cause of action and claims.

IT IS SO ORDERED.

Dated:   **August 27, 2007**                               **/s/ Lawrence J. O'Neill**
                                                                                    UNITED STATES DISTRICT JUDGE